UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY ROBERTSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANCEONE RECEIVABLES MANAGEMENT, INC.,<br><br>Defendant. | No. 1:19-cv-00749-DAD-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND<br><br>(Doc. No. 6) |

This matter is before the court on a motion to dismiss plaintiff Shelly Robertson's ("plaintiff") complaint filed on behalf of defendant AllianceOne Receivables Management, Inc. ("AllianceOne"). (Doc. No. 6.) A hearing on the motion was held on October 16, 2019. Attorney George Thomas Martin III appeared telephonically on behalf of plaintiff, and attorney Stephanie Lee Cobau appeared telephonically on behalf of AllianceOne. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant AllianceOne's motion to dismiss without leave to amend.

**BACKGROUND**

In her complaint plaintiff alleges as follows. Prior to May 2019, plaintiff took out a line of consumer credit with Target, a branded retail store chain. (Doc. No. 1 ("Compl.") at ¶ 6.)

/////

Thereafter, plaintiff's account went into arrears and was referred for collection to AllianceOne, a debt collection entity. (*Id.* at ¶¶ 7, 8.)

On or about May 9, 2019, AllianceOne sent plaintiff a one-page notice (the "notice"). (*Id.* at ¶ 9; *see also id.* at Ex. A.) The notice stated that $238.00 was the "Minimum Amount Due" on the account. (*Id.* at Ex. A.) As relevant here, the notice also informed plaintiff that:

> The above referenced account has been referred to our office . . . for collection. Any written correspondence may be mailed to the address above. PLEASE READ CAREFULLY ALL OF THE IMPORTANT DISLOSURES PROVIDED BELOW.
>
> The Minimum Amount Due of $238.00 is an amount that will bring your account to a current status and stop collections (unless your account goes past due in the future), if paid by 05/28/2019. The account would then be returned to our client, the creditor. The Minimum Amount Due is the amount of the debt we are attempting to collect. PLEASE NOTE that the due date of 05/28/2019 for paying the Minimum Amount Due does not eliminate or affect any of your rights described in the IMPORTANT DISCLOSURES below.
>
> …
>
> IMPORTANT DISCLOSURES
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request with the thirty-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.* at Ex. A) (indentation in original).

On May 29, 2019, plaintiff commenced this putative class action on behalf of herself and all others similarly situated. (*See* Compl.) Therein, plaintiff contends that the notice she received violates the federal Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Rosenthal Fair Debt Collection Practices Act (the "RFDCPA"), California Civil Code § 1788 *et seq.*, because it contains a demand for payment that overshadows or conflicts with her debt validation rights and because it is misleading and deceptive. (*Id.* at ¶¶ 1, 11–17, 38–46.)

On July 30, 2019, AllianceOne filed the pending motion to dismiss, contending that plaintiff's complaint fails to state a claim because: (1) the notice does not demand a payment; and (2) even if it did, that purported demand does not violate the FDCPA or the RFDCPA. (Doc. No. 6-1 at 7.) On September 3, 2019, plaintiff filed her opposition to the pending motion, and on October 7, 2019, AllianceOne filed its reply thereto. (Doc. Nos. 7, 11.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

/////

3

in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.    Plaintiff's FDCPA Causes of Action Fail to State Cognizable Claims.**

    1.    <u>Legal Standards for FDCPA Claims.</u>

"The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  Thus, "[t]he FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Id.* at 1060–61.  "The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute." *Id.* at 1060.

Plaintiff's complaint alleges violations of §§ 1692g and 1692e of the FDCPA.  Whether a debt collector's conduct violates either of these sections "requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Stuppiello v. Sw. Credit Sys., L.P.*, No. 16-cv-01811-H-JMA, 2017 WL 5983815, at *3 (S.D. Cal. Jan. 10, 2017) (same).  "The objective least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Terran*, 109 F.3d at 1431–32 (quoting *Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).  "The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1062 (internal quotation marks and citation omitted).  "This objective standard [thus] ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . .[,] the ignorant, the unthinking and the credulous." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (internal quotation marks and citation omitted).  "At the same time, the standard

4

preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Gonzales*, 660 F.3d at 1062 (internal quotation marks and citation omitted). Thus, while "[m]ost courts agree that [] the least sophisticated debtor may be uninformed, naive, and gullible, [] her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012); *see also Gonzales*, 660 F.3d at 1062 ("The FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar' misinterpretations.").

With this guidance in mind, the court will now consider whether the complaint plausibly alleges that the notice at issue violates §§ 1692g or 1692e of the FDCPA.

2. The Complaint Does Not Plausibly Allege a Violation of 15 U.S.C. § 1692g.

Section 1692g(a), entitled "Notice of debt; contents," requires a debt collector

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt [to] . . . send the consumer a written notice containing[:] (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)–(5). Plaintiff does not allege that the notice she received did not comply with these requirements. Rather, relying on § 1692g(b), she argues that despite these requirements having been met, the validation statement in the notice—that the consumer has the right to dispute the validity of the debt and ask for the name and address of the original creditor— is "overshadowed, confounded, or eviscerated by other language or words[,] as seen from the perspective of the least sophisticated customer." (Compl. (Doc. No. 1) at ¶ 11.) In this way, plaintiff contends, AllianceOne "seeks to unlawfully create an incentive for a consumer to bypass

/////

5

the right to dispute the debt by making the 'minimum payment' due and removing the account from collections altogether." (*Id*. at ¶ 14.)

Section 1692g(b) provides, in relevant part, that

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

15 U.S.C. § 1692g(b) (emphasis added). With respect to whether collection activity overshadows or is inconsistent with the required disclosures of a consumer's right to dispute the debt, the validation statement

> must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor. . . . [T]he notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency.

*Swanson*, 869 F.2d at 1225; *see also Terran*, 109 F.3d at 1432 (same). "Overshadowing or inconsistency may exist where language in the notice would 'confuse a least sophisticated debtor' as to her validation rights." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 991 (9th Cir. 2017). In *Terran*, for example, the Ninth Circuit noted that "[a] demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences." 109 F.3d at 1434. Thus, "requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g." *Id.*

AllianceOne contends the validation statement in its notice is not overshadowed or contradicted by other messages appearing in the notice. AllianceOne also argues that the least sophisticated debtor would not construe the notice to have *demanded* payment because the notice was only a prudential reminder to plaintiff about her account and lawful debt collection activities. (Doc. No. 6-1 at 11–12.) Plaintiff counters that the notice "demands payment on [the] Target account within . . . 19 day[s] and thereby overshadows Plaintiff and the Class Members right to [] dispute or request validation within [the] 30-day period afforded to consumers." (Doc. No. 7 at 16.) Plaintiff also notes that the language "Minimum Amount is Due" appears five times before the validation notice and once after it, which, she contends, emphasizes plaintiff's duty to make a payment. (*Id.* at 7, 20). The court is not persuaded by plaintiff's arguments.

First, the language "Minimum Amount *is* Due" never appears in the notice. Second, the notice does not demand a payment, and plaintiff's position to the contrary "read[s] language into the validation notice that is simply not there." *Stuppiello*, 2017 WL 5983815, at *5. The notice states that the "Minimum Amount Due[] [is] $238.00," notes that this is the "amount that will bring your account to a current status and stop collections . . . if paid by 05/28/2019," and asks plaintiff to "PLEASE NOTE that the due date of 05/28/2019 for paying the Minimum Amount Due does not eliminate nor affect any of your rights described in the IMPORTANT DISCLOSURES below." (Compl. at Ex. A). In other words,

> [a]lthough the validation notice requests payment of the debt and explains that payment of the debt will allow [plaintiff] to avoid further collection activity[,] [t]he notice does not state that this is the 'only' or 'exclusive' way to avoid further collection activity . . . . It simply provides [her] with an avenue for avoiding further collection activities.

*Stuppiello*, 2017 WL 5983815, at *5. Third, "a request for payment of the debt or a request for the consumer to contact the debt collector contained in a validation notice does not automatically violate the FDCPA." *Id.* For example, in *Renick v. Dun & Bradstreet Receivable Management Services*, the Ninth Circuit found that the notice before it did not overshadow or contradict the consumer's validation rights because the

/////

> statement on the reverse [side of a notice] that 'PROMPT PAYMENT IS REQUESTED' was in the same font as the accompanying validation notice; was followed by a statement informing Renick that he had 30 days to challenge the debt's validity; and did not convey a threat that could induce Renick to ignore his right to take 30 days to verify his debt and act immediately.

290 F.3d 1055, 1057 (9th Cir. 2002) (internal quotation marks and citation omitted). Instructive in this regard is the following observation by the district court in *Stuppiello*:

> Defendant's request for payment contained in the validation notice at issue was in the same font as the surrounding text, including the text containing the required section 1692(a) disclosures, and was placed in a separate paragraph [from] . . . the statutory disclosures. The request for payment did not contain any language contradicting the [] admonition in the notice that the debtor has thirty days to contest the validity of the debt. The request for payment was not emphasized in any other way. The request for payment was a request rather than a demand. And, finally, the request for payment carried no sense of urgency. The request for payment did not set forth a deadline or timeframe for the payment, and the request did not include any language stating that the payment must be made "immediately" or "now."

*Stuppiello*, 2017 WL 5983815, at *6 (internal quotation marks and citations omitted). In contrast, notices that have been found to overshadow or contradict the validation statements contained therein have been misleading in form and content. For example, in *Swanson*, the Ninth Circuit found that, with respect to the notice before it, there was

> little question that it [wa]s misleading in both form and content. The required debt validation notice [wa]s placed at the very bottom of the form in small ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominate[d] the center of the page . . . [and] the substance of the language st[ood] in threatening contradiction to the text of the debt validation notice.

869 F.2d at 1225–26.

Here, the validation statement is in the same font as the surrounding text and is prominently indented so as to draw the reader's attention to it. Moreover, unlike the notices in *Renick* and *Stuppiello*, the notice here directed the reader to "PLEASE READ CAREFULLY ALL OF THE IMPORTANT DISCLOSURES PROVIDED BELOW" and to "PLEASE NOTE that the due date of 05/28/2019 . . . does not eliminate nor affect any of your rights described in the IMPORTANT DISCLOSURES." (Compl. at Ex. A.) Thus, the notice provided in this case

8

clearly directs the creditor to the validation statement, in an explicit effort to *not* overshadow or contradict the creditor's validation rights. Finally, as discussed above, the notice in this case did not demand a payment. Under similar circumstances the court in *Stuppiello* concluded as follows:

> Accordingly, in light of the similarities between the facts in the present case and the facts in *Renick*, the Ninth Circuit's decision in *Renick* is controlling and the Court, therefore, concludes that the [] notice at issue d[oes] not contradict the admonition that the debtor has thirty days to contest the validity of the debt and d[oes] not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt. Thus, the validation notice d[oes] not violate the disclosure requirements contained in section 1692g.

2017 WL 5983815, at *6 (internal quotation marks and citation omitted).

Plaintiff's reliance on the decision in *Chan v. Forster & Garbus, LLP*, No. 2:18-cv-08650-SVW-JEM, 2019 WL 2265135 (C.D. Cal. May 24, 2019), does not change the court's conclusion in this regard. In *Chan*, the court found that a notice that stated a minimum amount was due *by* a date certain—and therefore "referred to a payment to be made within thirty days"—could suggest to the least sophisticated debtor that he was required to make a payment to the debt collector to pay off part of his debt. *Id.* at *4–5. The district court in *Chan* ultimately found that the notice before it demanded a payment because the notice contained a payment deadline. *Id.* Plaintiff argues that the notice in this case "is virtually identical" to the one in *Chan*, and that *Chan* therefore compels the conclusion that the notice at issue here overshadows the disclosure of the plaintiff's right to dispute the debt. (Doc. No. 7 at 16–17.) Again, plaintiff's argument is unpersuasive.

First, unlike the notice in *Chan* and contrary to plaintiff's assertion, the notice at issue here, does not *demand* payment, nor does it contain a payment deadline. In *Chan*, the court pointed out that, "[a]t the top of the page, the letter state[d]: 'MINIMUM AMOUNT due *by* October 24, 2018.'" 2019 WL 2265135, at *1 (emphasis added). Here, AllianceOne's notice does not state that a minimum amount is due *by* a date certain. Plaintiff argues that inclusion of the May 28, 2019 date in the notice is a payment deadline (Doc. No. 7 at 16), but the notice actually states that "[t]he Minimum Amount Due . . . is an amount that will bring your account to

9

current status and stop collections . . . *if* paid by 05/28/2019," (Compl. at Ex. A) (emphasis added). In other words, "the notice was informational, informing [plaintiff] that failure to pay could adversely affect her credit reputation . . . . The least sophisticated debtor would [therefore] construe the notice as a prudential reminder . . . ." *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

Second, the notice in this case contains several admonitions directing the reader to the "IMPORTANT DISCLOSURES" and states explicitly that "the due date of 05/28/2019 for paying the Minimum Amount Due *does not eliminate nor affect any of your rights* described in the IMPORTANT DISCLOSURES." (*Id.*) (emphasis added). Plaintiff argues that the notice in *Chan* also contained language indicating that the debtor's "right to dispute the validity of th[e] debt or any portion thereof, or to seek verification of the debt . . ., is not affected by the minimum payment due date," 2019 WL 2265135, at *1, but that the court there nonetheless found that the notice before it violated the FDCPA. (Doc. No. 7 at 17.) A review of *Chan*, however, reveals that the court in that case did not analyze that language quoted by plaintiff in rendering its decision. In the undersigned's view, such explanatory language is important in the analysis of notices such as those involved here and in the *Chan* case because "[t]o avoid liability under § 1692, a debt collection letter must sufficiently explain any statements that contradict or confuse the required validation notice." *Dunn v. Derrick E. McGavic, P.C.*, 653 F. Supp. 2d 1109, 1113 (D. Or. 2009); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85–86 (2d Cir. 1998) ("[W]e emphasize that CCI's request for immediate payment did not, standing alone, violate the FDCPA. Rather, CCI's violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt."). Here, AllianceOne's notice explicitly informed plaintiff that the minimum amount due is the amount that would bring her account to current status if paid by a certain date and its admonition that this date did not in any way eliminate or affect plaintiff's validation rights sufficiently explains away any contradiction or confusion that inclusion of the May 28, 2019 due date might arguably have created when viewed in isolation. *Gonzales*, 660 F.3d at 1062 (The objective least sophisticated debtor standard "preserv[es] a

10

quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care") (internal quotation marks and citation omitted); *see also id.* ("The FDCPA does not subject debt collectors to liability for 'bizarre,' 'idiosyncratic,' or 'peculiar' misinterpretations.").

In any event, the decision in *Chan* is certainly not binding on the undersigned. This court is satisfied that the various Ninth Circuit authorities that it has relied upon and discussed above compel the conclusion that the notice at issue here does not violate § 1692g of the FDPCA. As those and other similar decisions demonstrate, "in each [case where a court has concluded that § 1692g was violated], payment was demanded within a time period less than the statutory thirty days granted to dispute the debt and this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt." *Terran*, 109 F.3d at 1433. That is simply not the case here.

Accordingly, the court finds that plaintiff has failed to state a claim under 15 U.S.C. § 1692g.

3. The Complaint Does Not Plausibly Allege a Violation of 15 U.S.C. § 1692e.

Plaintiff also alleges that the notice at issue violates 15 U.S.C. § 1692e and e(10) of the FDCPA because the notice "constitutes [a] false and misleading communication[] made to plaintiff." (Compl. at ¶ 41.) AllianceOne moves to dismiss this claim because plaintiff "does not set forth the disputed language, relies solely on conclusory allegations, and improperly pleads a claim for violation of Section 1692e and 1692(e)(10)." (Doc. No. 6-1 at 22 n.3.)

"As relevant here, § 1692e of the FDCPA broadly prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Gonzales*, 660 F.3d at 1061 (quoting 15 U.S.C. § 1692e). "The Act includes a non-exhaustive list of examples of proscribed conduct, including: . . . 'The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'" *Id.* (quoting 15 U.S.C. § 1692e(10)). "[I]t is well established that [a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 1062 (internal quotation marks and citation omitted).

/////

Here, plaintiff's complaint fails to allege precisely which aspect of the notice was false, deceptive, or misleading such that it violated § 1692e. The complaint's only references to § 1692e are conclusory. (*See* Compl. at ¶¶ 41, 45) ("the Letter is in violation of §§ 1692e and 1692e(10) as . . . [the] Letter constitutes false and deceptive communications made to Plaintiff and the putative class"; and "Defendant violated §§ . . . 1692e and 1692e(10) of the FDCPA"). The court need not assume the truth of these legal conclusions cast in the form of factual allegations, and thus finds that the complaint also fails to plausibly allege a violation of § 1692e.

To the extent that plaintiff is arguing that the notice issued here is materially misleading because "the letter's notice regarding the minimum payment due and the statement regarding the interplay between the payment due and the thirty-day verification period are materially misleading," (Doc. No. 7 at 25), that argument suffers from two deficiencies. First, plaintiff raises this argument for the first time in her opposition to the pending motion. "The 'new' allegations contained in [plaintiff's] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Second, even if the court were to consider these new allegations, they would fail to support a cognizable claim for violating § 1692e. Plaintiff again relies on the decision in *Chan* support of her § 1692e claims. The court in *Chan* found that:

> On the one hand, the letter states that if Plaintiff pays the minimum amount due, the payment would "stop collections" and the "account [would] then be returned to [Defendant's] client." On the other hand, the letter states that if Plaintiff "make[s] the minimum payment due by the due date, [he] may still exercise [his] right to dispute or request verification of indebtedness."
>
> At first blush, these statements do not appear inconsistent. However, if Plaintiff had made the minimum payment due, then Defendant would have stopped collections and returned the account to Target and, consequently, Defendant would have had no obligation to respond to a debt validation request made by Plaintiff. Had Defendant returned the account to Target, it would not have been obligated under the FDCPA to verify Plaintiff's debt—yet the letter unambiguously states that under such a circumstance Plaintiff could still exercise his right to request verification of indebtedness

*Chan*, 2019 WL 2265135, at *6–7. In this case, however, language analogous to that found inconsistent and misleading in *Chan* does not appear at all in AllianceOne's notice. Specifically, the statement focused upon by the court in *Chan*—"If you make the minimum payment due by the due date, you may still exercise your right to dispute or request verification of indebtedness," *id.* at *1—does not appear in the notice at issue here, and therefore cannot contradict any language in AllianceOne's notice. Thus, even if plaintiff's allegations with respect to the alleged § 1692e violations had been included in her complaint, her § 1692e claim would still fail to state a cognizable claim for relief because those allegations are not applicable to the notice that plaintiff received.

Accordingly, the court finds that plaintiff has failed to state a claim under 15 U.S.C. § 1692e.

**B.     Plaintiff's RFDCPA Cause of Action Fails to State a Cognizable Claim.**

Plaintiff also alleges state law violations pursuant to the RFDPCA, which is "the state version of the FDCPA." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). "The [RFDCPA, however,] mimics or incorporates by reference the FDCPA's requirements, including those described above, and makes available the FDCPA's remedies for violations. Thus, for purposes of this case, whether a validation notice violates the [RFDCPA] turns on whether it violates the FDCPA." *Id.* (internal citation omitted).

Having already found that plaintiff's complaint fails to allege a violation of the FDCPA, it necessarily follows that the complaint also fails to allege a cognizable claim for violation of the RFDCPA.

**C.     Granting Leave to Amend Would be Futile.**

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend need not be granted when the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See AmerisourceBergen Corp. v. Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). Here, the granting of leave to amend would be futile because the only factual

13

allegations that could support a claim to relief would be based on the notice received by plaintiff. The court has concluded that notice did not violate the FDCPA or the RFDCPA. Thus, there are no additional facts plaintiff could allege that could plausibly state a cognizable claim. The court will therefore grant AllianceOne's motion to dismiss without leave to amend.

**CONCLUSION**

For the reasons set forth above, AllianceOne's motion to dismiss (Doc. No. 6) is granted without leave to amend and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 29, 2020**

UNITED STATES DISTRICT JUDGE